76125. WOOTEN v. G.M.H. AUTO SALES, INC. et al.
(370 SE2d 165)

BIRDSONG, Chief Judge.

This is an appeal by Lola Wooten, individually and as sole heir of her deceased husband, from the order of the Superior Court of DeKalb County granting in part and denying in part appellee's motion for judgment n.o.v. and, alternatively, for a new trial. In its order of September 22, 1987, the superior court granted appellee surety's motion for judgment *non obstante veredicto*, and it is this portion of the order that appellant contests.

Robert M. Garmon, President of appellee G.M.H. Auto Sales, Inc. executed a promissory note in the amount of $10,000 to the appellant and her deceased husband in consideration of their loaning $10,000 to Garmon to be used in operation of G.M.H. The $10,000 was not repaid pursuant to the terms of the promissory note, and the appellant/Wootens made a demand for payment.

In response to the payment demand, Garmon as President of G.M.H. "sold, transferred and assigned" to appellant certain retail installment contracts and security agreements covering the sale of 25 motor vehicles, which had been sold to various buyers by G.M.H. In

addition to conveying the installment contracts and security agreements, Garmon also transferred certificates of title for 12 of the 25 vehicles to the appellant and her husband, but apparently never transferred possession of the remaining 13 certificates of title. Subsequently, but before appellant/Wootens registered the 12 motor vehicle titles in their possession, G.M.H. obtained replacement certificates of title for 12 motor vehicles, continued to collect payments under the installment contracts in question, and apparently refused to remit any monies therefrom to the appellant/Wootens.

This action was tried before a jury, which returned a verdict in favor of the appellant/Wootens against both G.M.H. and its surety National Security Fire & Casualty Company in the amount of $27,000. Appellee's motion for directed verdict was denied; however, the trial court subsequently granted appellee's motion for judgment n.o.v. on grounds essentially that the appellant/Wootens were not within the class protected by G.M.H.'s bond. *Held*:

1. Appellant's first enumerated error is that the trial court erred in ruling that, as a matter of law, the bond requirement of OCGA § 43-47-1 et seq. was not intended to require a bond to provide for the benefit of, nor to make monies available to, a holder of security interests in motor vehicles, having possession of certificates of title for those vehicles, who purchased such security interests, and obtained such certificates of title from a used car dealer, for damages sustained by the security interest holder as a result of fraudulent acts by the used car dealer. Specifically, it is asserted that appellant is within the class of persons who are protected by the bonding requirements of OCGA § 43-47-8 (h).

The issue presented is one of first impression for our courts. OCGA § 43-47-8 (h) pertinently provides that: "Each application for a license shall show that the prospective licensee has or has made provision for a bond. The required bond . . . shall be payable . . . for the use and benefit of any purchaser and vendees or successors in title of any used motor vehicle and shall be conditioned to pay all loss, damages, and expenses that may be sustained by such purchaser, his vendees, or successors in title that may be occasioned by reason of any fraudulent misrepresentation or by reason of any breach of warranty as to such used vehicle."

The trial court, citing OCGA § 11-9-105 (1) (b) held that where both the title certificate and the installment sales contract to an individual car were actually delivered to the appellant/Wootens, a "possessory security interest in chattel paper" to secure G.M.H.'s performance on the note was created; that as between the parties the appellant/Wootens also had an interest in the proceeds of the chattel paper; that the Wootens' interest "is not sufficient" to transfer "actual title in these cars" to them; that the appellant/Wootens "simply

had physical possession of the title certificates to cars purchased by consumers from G.M.H."; that as a matter of law the appellant/Wootens "were not consumer purchasers, nor vendees or successors in title from such . . . within the meaning of OCGA § 43-47-8 (h)"; and that accordingly, the appellant/Wootens "are not within that class legislatively intended to be protected by this bond."

Appellant/Wootens at best are "security interest holders" as to certain motor vehicles sold by G.M.H. A "security interest holder" in a motor vehicle is a "holder of an *interest* in a vehicle reserved or created by agreement and which secures payment or performance of an obligation." (Emphasis supplied.) See, e.g., OCGA § 40-3-2 (15). Such a "security interest holder" is not a purchaser or vendee of, or a successor in title to, the motor vehicle in question; rather, even though in physical possession of the vehicle's certificate of title, he is only the holder of a legally recognized *interest* therein. Accordingly, although the Wootens were in physical possession of certain certificates of title to motor vehicles, under the attendant facts they were not the legal owners of those vehicles. The Wootens, therefore, were not purchasers, vendees or successors in title, within the meaning of OCGA § 43-47-8 (h), to any of the used motor vehicles in question.

We are satisfied that the bond requirements of OCGA § 43-47-8 (h) do not on the face of the statute protect security interest holders such as the Wootens. Moreover, it may be concluded that the legislative history of the bond protection provisions of this statute confirms that it was not the legislature's intent to provide such extended bonding protection. First, it would have been an easy legislative task to include expressly "security interest holders" within the class of people listed in the statute. Secondly, the bond is so limited in amount that it is quite unlikely that the legislature intended for it to protect these types of security interests. Thirdly, we note that the protection provisions of the Used Car Dealers' Registration Act have been subject to frequent legislative modification, and that the legislature therefore had ample opportunity to protect security interest holders therein had they desired to do so. See generally Ga. L. 1958, p. 59; Ga. L. 1960, p. 980; Ga. L. 1968, p. 27; Ga. L. 1974, p. 1240; Ga. L. 1983, p. 553; Ga. L. 1985, pp. 976-977. Further, the legislative history reflects that under the Act, protection was first provided for the general *public* against injuries caused by the negligence of the applicant or dealer (Ga. L. 1960, supra), later a bond was required to protect against "any fraudulent misrepresentation or by reason of any breach of warranty as to such used vehicle" (Ga. L. 1974, supra). The legislative history of those modifications, however, does not reflect that the protection provided by OCGA § 43-47-8 (h) was to be extended to cover "security interest holders." Of course, a security interest holder, like any other person, can file a regulatory complaint, with the State Board of

Registration of Used Car Dealers, against a used car dealer. This board is empowered to take certain adverse administrative action, including license suspension or revocation, against a used car dealer found to have engaged in dishonest dealing or other expressly prohibited misconduct. See generally OCGA § 43-47-10.

We find therefore appellant's first enumerated error is without merit.

2. Appellant's second enumerated error is that the trial court erred in ruling that, as a matter of law, the bond issued to G.M.H. by appellee National Security Fire & Casualty did not provide protection to appellant, as a holder of security interests in motor vehicles, having possession of title for those vehicles, who purchased such security interests and obtained the certificates of title from G.M.H. against fraudulent acts committed by appellee G.M.H. Specifically, it is argued that appellant is included within the list of beneficiaries of the bond issued by appellee National and is, therefore, entitled to compensation from such bond.

The bond in question was provided by appellee National for appellee G.M.H. Auto Sales and was intended to provide protection for "the general public that purchases cars from the dealer": This instrument provides a $100,000 bond "for the use and benefit of any purchasers of any used motor vehicle and their vendees or successors in title. . . ." It further provides that "the conditions of this obligation are such that if [G.M.H.] shall comply with the conditions of any written contract or written warranty by such dealer or his agent, made in connection with the sale or exchange of any motor vehicle and shall pay all loss, damages and expenses that may be sustained by his vendees or successors in title by reason of any fraudulent misrepresentation as to liens against or titles to any used motor vehicle then the bond is to be void; otherwise it is to remain of full force and effect." Finally, it is provided that "this Bond is executed pursuant to and in accordance with the provisions of Ga. L. 1958, p. 55 et seq., governing the registration of used car dealers in Georgia, and is intended to be and *shall be construed* to be a Bond in compliance with the requirements thereof." (Emphasis supplied.)

The instrument on its face and the uncontested evidence of record establishes that the bond in question is a statutory bond executed "pursuant to and in accordance with" the laws of this state. This court has held that as a general rule " 'where a bond is executed under the authority of a public statute then in force, it will be presumed that the intention of the parties was to execute such bond as the law requires, in the absence of anything appearing to show a different purpose and intent; that such statute constitutes a part of the bond as if incorporated in it; and that, in construing the bond in connection with the statute, whatever is included in the bond which is

not thereby required must be read out, and whatever is not expressed and ought to have been incorporated must be read in, so as to conform to the requirements of the law.'" *Home Indem. Co. v. Battey Machinery Co.*, 109 Ga. App. 322, 326-327 (136 SE2d 193), and cases cited therein. Applying this principle and examining the bond on its four corners, we find that it is not ambiguous as to those classes of persons given protection thereby, and that the appellant/Wootens are not among those classes of persons protected and entitled to be indemnified thereby.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED MAY 5, 1988 —
REHEARING DENIED JUNE 1, 1988.

*John F. Daugherty, Donald J. Sharp*, for appellant.
*C. Lawrence Jewett, Jr.*, for appellees.